Debra L. Wabnik (dw-0944)
Stagg Wabnik Law Group LLP
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4550
dwabnik@staggwabnik.com

*Attorneys for Plaintiffs*
*N.N., a minor, by his Parents*
*and natural guardians, Sandra Natal and Noel Natal,*
*and Sandra Natal and Noel Natal, individually*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

| | |
|---|---|
| N.N., a minor, by his parents and natural guardians SANDRA NATAL and NOEL NATAL, and on behalf of SANDRA NATAL and NOEL NATAL, individually, <br><br> Plaintiffs, <br><br> -against- <br><br> OCEANSIDE UNION FREE SCHOOL DISTRICT and DENISE KLODZINSKI, <br><br> Defendants. | Civil Action No.: 2:23-cv-7282 <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

---------------------------------------------------------------------X

Plaintiffs N.N., a minor, by his parents and natural guardians Sandra Natal ("Sandra") and Noel Natal ("Noel") and Sandra and Noel individually (collectively "Plaintiffs"), through their attorneys, Stagg Wabnik Law Group LLP, complaining of Defendants Oceanside Union Free School District (the "District"), and Denise Klodzinski ("Klodzinski") (collectively "Defendants"), herein allege as follows:

## NATURE OF THE ACTION

1. N.N. is a sixteen-year-old student who was enrolled at Oceanside High School (the "School") in the District. N.N. is classified as a child with autism spectrum disorder and has limited communication skills. N.N. was a happy-go-lucky child with a positive attitude until the 2022-23 school year when Ro Pallette ("Pallette") became an aide in his class. Once Pallette

became N.N.'s aide, he became increasingly agitated and expressed fear and anxiety about attending School. N.N.'s stress and anxiety about returning to the School were so severe that Sandra could no longer get N.N. to attend the School. When N.N. informed Sandra that Pallette yelled at him and on one occasion pinched him, Sandra complained to Klodzinski but was ignored. The District did not address Pallette and Klodzinski's conduct, did not conduct a legitimate investigation into Pallette and Klodzinski's conduct, and refused to remove Pallette from Klodzinski's classroom. Sandra and Noel therefore had no choice but to homeschool N.N. He is currently on home instruction and is being deprived a proper education.

## VENUE

2. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the laws of the United States. Specifically, Plaintiffs assert claims under Title IX of the Education Amendments of 1972, 20 U.S.C § 1681, et seq.

3. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 USC § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all parties reside within this Court's judicial district and a substantial part of the events or omissions giving rise to the claims occurred within this district.

## PARTIES

5. N.N. is a minor residing in Nassau County, New York.

6. Sandra is N.N.'s mother and resides with N.N. in Nassau County, New York.

7. Noel is N.N.'s father and resides with N.N. in Nassau County, New York.

8. At all relevant times herein, the District was and is a municipality with a central office located at 145 Merle Avenue, Oceanside, New York, which operates and oversees the School.

9. At all times relevant, the District was a recipient of federal funding within the meaning of 20 USC § 1681(a).

10. At all relevant times herein, the District employed Klodzinski as N.N.'s teacher.

11. At all relevant times herein, Klodzinski resides in Nassau County, New York.

## STATEMENT OF FACTS

12. N.N. is a sixteen-year-old student who was enrolled at the School during the 2022/23 school year.

13. N.N. is diagnosed with Autism Spectrum Disorder.

14. N.N. has an Individualized Education Plan ("IEP"), which provides that he must be in a self-contained class with an aide.

15. In or about September 2022, Klodzinski became N.N.'s teacher.

16. In or about September 2022, Pallette became N.N.'s aide.

17. In or about October 2022, N.N.'s behavior began to change, and he was particularly agitated in the morning when getting ready for School.

18. On or about October 13, 2022, Sandra received an email from Klodzinski stating that N.N.'s behavior had changed and he was engaging in stimulatory behavior, such as arm waving and vocalizations. Klodzinski also noted that N.N. was "extremely distracted by internal thoughts."

19. Over the following weeks, Klodzinski continued to send Sandra emails about N.N.'s new negative behaviors.

20. Klodzinski informed Sandra that, unlike previous years, N.N. was no longer progressing toward and achieving his IEP goals. N.N. was making less than anticipated progress and now required tremendous and continuous refocusing and repetition along with visual cues.

21. Previously, N.N. had enjoyed going to the School but he became increasingly agitated and expressed fear and anxiety about attending the School.

22. On or about November 3, 2022, N.N.'s behavior became so extreme that it required Sandra to take a leave of absence from her job. N.N.'s stress and anxiety about returning to the School were so severe that Sandra could no longer get N.N. to attend the School.

23. Because of N.N.'s Autism, he was sensitive to yelling and did not respond well to being yelled at.

24. On or about November 7, 2022, Sandra asked N.N. if anyone had yelled at him.

25. N.N. responded that "Ro" (Pallette) screams at him.

26. Sandra immediately emailed Klodzinski about Pallette yelling at N.N., but Klodzinski never responded.

27. On or about November 10, 2022, Sandra observed a bruise on N.N.'s armpit near his rib while giving him a bath. It appeared as if someone had pinched him.

28. N.N. informed Sandra that Pallette had pinched him about a week earlier.

29. Sandra again contacted Klodzinski after discovering the bruise but once more received no response.

30. After not receiving a response from Klodzinski, Sandra contacted N.N.'s guidance counselor, Jaclyn Sileo ("Sileo").

31. Sileo told Klodzinski to call Sandra about N.N.'s returning to the School but in no way acknowledged Pallette's treatment of him.

32. Sandra demanded an in-person meeting. In response, Defendants conducted a sham investigation.

33. During a November 17, 2022 meeting with Sandra and Noel, Saudia Mahamed (Director of Special Education High School Oceanside School District), Dr. Brendon Mitchell (School Principal), Tracy Murray (Executive Director of Special Education), and Ester Marks (Assistant Director of Care Management at Advance Care Alliance) admitted that Pallette was "loud" "boisterous" and "gruff."

34. Sandra was told Klodzinski would attend the November 17th meeting. She was not there, and neither was Pallette.

35. Mahamed acknowledged that Pallette had not even been friendly to her as a new employee.

36. Mahamed acknowledged that Pallette's yelling at N.N. to put his hands down was inappropriate.

37. At no time during the school year did Klodzinski inform Sandra or Noel that Pallette was working with N.N. or that Pallette was known to be "loud," "boisterous," or "gruff" with others.

38. Instead, Klodzinski referred N.N. to a neurologist who found nothing physically wrong with him.

39. A second meeting was held on November 23, 2022 with Sandra, Dr. Jill DeRosa ("DeRosa") (Assistant Superintendent for Human Resources, Student Services and Community Activities), Dr. Brendon Mitchell, and Tanya Murray.

40. Again, no one who witnessed Pallette's treatment of N.N. was in attendance.

41. The District refused to do anything about the allegations of verbal and physical abuse of N.N. by Pallette or even acknowledge it was a possibility.

5

42. DeRosa told Sandra that the District could not do anything about Pallette's treatment of N.N. because "employees have rights."

43. Sandra remained concerned about her son and asked for in-home services and education for him.

44. Upon information and belief, Dr. Mitchell offered in-home services and education during the meeting on November 17th.

45. Later, when Sandra inquired about the home services and education, Dr. Mitchell offered during the meeting on November 17th, Dr. Mitchell and Dr. DeRosa refused, stating that home instruction is only for students who cannot attend the School because they are physically hurt.

46. By letter dated November 28, 2022, the District advised Sandra and Noel that its "investigation" was over and N.N. should return to the School. However, Sandra and Noel were not interviewed for the investigation, nor was N.N.

47. The District refused to remove Pallette from N.N.'s classroom.

48. The District refused to address Klodzinski's failure to respond to Sandra's inquiries about what was happening with her son.

49. Since the District did not address Pallette and Klodzinski's conduct, did not conduct a legitimate investigation into Pallette and Klodzinski's conduct, and refused to remove Pallette from Klodzinski's classroom, Sandra and Noel had no choice but to homeschool N.N.

50. By letter dated December 9, 2022, Sandra officially began the process for homeschooling N.N. and has been homeschooling him since then.

51. N.N.'s demeanor improved once he realized he would not have to return to Pallette.

52. N.N. remains on home instruction, missing interaction with his peers and community and other educational opportunities.

53. Defendants' refusal to provide any substantive information about Pallette's conduct or current status has caused and will continue to cause additional stress and anxiety.

54. Plaintiffs filed a Notice of Claim on February 1, 2023 and Municipal Law § 50-h hearings were conducted on April 25, 2022. More than 30 days have passed and the District has made no efforts to resolve the matter.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST THE DISTRICT
**(Disability Discrimination in Violation of Title IX)**

55. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

56. Pursuant to Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of their disability, be excluded from the participation in be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

57. Sandra informed the District that N.N. stated Pallette abused N.N. by pinching him and yelling at him.

58. Sandra further informed the District that having Pallette as an aide adversely affected N.N.'s education.

59. As a result of Pallette's treatment, N.N. began to have problems with agitation, stimulatory behavior, distractedness, and meeting his IEP goals.

60. DeRosa told Sandra that nothing could be done about Pallette because "employees have rights."

61. DeRosa did not take into account N.N.'s rights and he remains on home instruction because the District refused to take any action against Pallette.

62. As the District received federal financial assistance, it was obligated to address Plaintiffs' report of disability discrimination under Title IX.

63. By its acts and omissions, the District was deliberately indifferent to Plaintiffs' claims and created a hostile educational environment for N.N. The District's deliberate indifference included but was not limited to failing to conduct a fair investigation into Plaintiffs' claims of assault and intentional infliction of emotional distress and not providing N.N. with a new and proper placement.

64. As a result of the District's acts and omissions, N.N. has been out of the school environment since November 7, 2022.

65. The District's actions were deliberate and intentional.

66. As a direct and proximate result of the District's violations of N.N.'s rights under Title IX, N.N. suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages, and losses, including, but not limited to: expenses for past and future medical and psychological care and attorneys' fees and costs.

67. The District should also be compelled to reinstate N.N. to an appropriate educational setting.

**AS AND FOR A SECOND CAUSE OF ACTION
AGAINST THE DISTRICT
(Retaliation in Violation of Title IX)**

68. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

69. Plaintiffs engaged in activity protected under Title IX when they reported that N.N. stated that Pallette assaulted and verbally abused N.N.

70. Plaintiffs engaged in activity protected under Title IX when they requested that Defendants conduct an investigation into Plaintiffs' claims of assault and verbal abuse.

71. Defendants retaliated against N.N. for protected activity under Title IX. Defendants' retaliation included but was not limited to, referring N.N. to a neurologist when his behavior was caused by Pallette, conducting a sham investigation and refusing to remove Pallette from N.N.'s classroom.

72. Defendants' retaliatory acts occurred immediately after the protected activity.

73. Defendants' retaliatory actions violating Title IX were willful, deliberate, and intentional.

74. As a direct and proximate result of Defendants' violation of N.N.'s rights under Title IX, N.N. suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages, and losses, including, but not limited to: expenses for past and future medical and psychological care, and attorneys' fees and costs.

75. Defendants should also be compelled to reinstate N.N. to an appropriate educational setting.

**AS AND FOR A THIRD CAUSE OF ACTION<br>
AGAINST THE DISTRICT<br>
(42 U.S.C. § 1983)**

76. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

77. N.N.'s Equal Protection rights were violated when he suffered harassment and assault at the School.

78. Title IX provides in pertinent part: [N]o otherwise qualified individual with a disability… be excluded from participation, denied benefits, or subjected to discrimination under any program or activity receiving Federal financial assistance.

79. Title IX provides students like N.N. clear civil rights to be free from known disability discrimination at school.

80. Title IX imposes a binding mandatory obligation on federal funding recipients like the District, prohibiting it from discriminating against students based on a disability.

81. The District had a duty to train and failed to adequately or sufficiently train their administrators and staff about disability discrimination against students and Title IX.

82. The District failed to train its administrators and staff on, among other things, the prohibition, illegality, and impropriety of retaliating against students like N.N. who report violations of Title IX, which is vital to enforcing Title IX.

83. The District failed to train its administrators and staff, effectively denying N.N. established federal and Constitutional rights.

84. The District's failure to train administrators and staff was deliberate, reckless, and in callous indifference to N.N.'s federally protected rights.

85. As a direct and proximate result of the District's actions, inactions, and deliberate indifference to and violation of N.N.'s clearly established Constitutional and federal rights, N.N. suffered and continues to suffer injuries including, without limitation, emotional distress, loss of enjoyment of life, fear, anxiety, and trauma; expenses for past and future medical and psychological care; and attorneys' fees and costs.

**AS AND FOR A FOURTH CAUSE OF ACTION
AGAINST THE DISTRICT AND KLODZINSKI
(Negligence)**

86. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

87. Defendants owe and continue to owe Plaintiffs a duty to take due care to protect the safety of students enrolled in the School.

88. Defendants were also obliged to supervise the individuals employed in the School.

89. Defendants' duty extended to include a duty to supervise and train employees employed by the School and ensure these employees complied with Defendants' policies and procedures and the law.

90. The conduct of Pallette described by N.N. constituted inappropriate, discriminatory and abusive behavior.

91. Defendants failed to take due care to supervise Pallette; failed to protect N.N. from Pallette; failed to promulgate and enforce policies and procedures to ensure Pallette did not violate the law; failed to exercise reasonable care to investigate the behavior of Pallette; failed to create or develop a plan to address the behavior of Pallette; and otherwise were careless, reckless and/or negligent.

92. The negligence of Defendants, their agents, employees and/or servants damaged N.N., causing him to lose educational opportunities and benefits, severe emotional distress, and other consequential damages to be determined at trial.

93. The negligence of Defendants, their agents, employees and/or servants also damaged Sandra and Noel, causing them severe emotional distress, loss of earnings, and other consequential damages to be determined at trial.

94. By reason of the foregoing, Defendants are liable to Plaintiffs for compensatory damages in an amount to be determined at trial, plus punitive damages.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**(Negligent Infliction of Emotional Distress)**

95. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

96. The conduct of Pallette described by N.N. constituted inappropriate, discriminatory and abusive behavior, including pinching him so hard it caused a bruise and yelling at him despite his disability.

97. Defendants knew or should have known of Pallette's abusive behavior but did not remove her from working with disabled students.

98. Pallette's behavior made N.N. increasingly agitated and he expressed fear and anxiety about going to the School.

99. Pallette's described conduct was not focused on helping students like N.N. with disabilities.

100. Pallette's actions toward N.N. altered the terms and conditions of his educational experience at the School and caused him great emotional harm.

101. Defendants failed to take due care to supervise Pallette; failed to protect N.N. from Pallette; failed to promulgate and enforce policies and procedures to ensure that Pallette did not violate the law; failed to exercise reasonable care to investigate the behavior of Pallette; failed to create or develop a plan to address the reported behavior of Pallette; and otherwise were careless, reckless and/or negligent.

102. The acts and/or omissions of Defendants, their agents, employees and/or servants resulted in N.N. suffering great anxiety, discomfort, and mental anguish.

103. The acts and/or omissions of Defendants, their agents, employees and/or servants also damaged Sandra and Noel, causing them severe emotional distress, loss of earnings, and other consequential damages to be determined at trial.

104. By reason of the foregoing, Defendants are liable to Plaintiffs for compensatory damages in an amount to be determined at trial, plus punitive damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
### (Intentional Infliction of Emotional Distress)

105. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

106. Pallette's conduct described by N.N. constituted inappropriate behavior.

107. Defendants knew or should have known of Pallette's behaviors.

108. Defendants knew or should have known Pallette's propensity to engage in inappropriate interactions with students but did not remove Pallette from her post.

109. After Sandra and Noel reported Pallette's conduct, Defendants engaged in a sham investigation, refused to transfer Pallette from the School, and forced Sandra and Noel to remove N.N. from the School and seek home instruction.

110. Defendants refused to provide N.N. with home education or services.

111. As a result of Defendants' conduct, Plaintiffs suffered from extreme emotional distress, humiliation, and embarrassment, for which Plaintiffs are entitled to an award of damages, including punitive damages and attorneys' fees.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court grant judgment in their favor and against Defendants:

A. Awarding Plaintiffs damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiffs for all monetary and/or economic damages, including but not limited to, compensation for their severe mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, emotional pain and suffering and other physical and mental injuries;

B. Awarding Plaintiffs damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiffs for all monetary losses, including but not limited to loss of past and future income, compensation, and benefits, for which they are entitled to an award of monetary damages and other relief;

C.  Awarding Plaintiffs damages for any and all other monetary and/or non-monetary losses suffered by Plaintiffs in an amount to be determined at trial, plus pre-judgment interest;

D.  Compelling Defendants to return N.N. to an appropriate educational setting;

E.  Awarding Plaintiffs punitive damages in an amount to be determined at trial;

F.  Awarding Plaintiffs the costs they have incurred in this action, as well as Plaintiffs' reasonable attorneys' fees to the fullest extent permitted by law; and

G.  Awarding Plaintiffs such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
September 29, 2023

                        Stagg Wabnik Law Group LLP

                        By: /s/Debra L. Wabnik
                            Debra L. Wabnik (dw-0944)
                            Scott W. Clark (sc-9218)
                            *Attorneys for Plaintiffs*
                            *N.N., a minor, by his Parents and*
                            *natural guardians, Sandra Natal and*
                            *Noel Natal, and Sandra Natal and*
                            *Noel Natal, individually*
                            401 Franklin Avenue, Suite 300
                            Garden City, New York 11530
                            (516) 812-4550

TO: OCEANSIDE UNION FREE SCHOOL DISTRICT
145 Merle Avenue
Oceanside, New York 11572-2206

DENISE KLODZINSKI
92 Rodney Place
Rockville Centre, New York 11570-5825